IN MANDAMUS DECISION
{¶ 1} Relator, Forest Richards, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his request for permanent partial disability compensation in the form of compensation for impaired earning capacity and to grant his request to change his election.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied. Relator and respondents have filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator argues that the commission failed to comply with the mandate of this court in State ex rel. Richards v. United Parcel Service (May 14, 1998), Franklin App. No. 97APD06-855, by failing to explain the claimed deficiencies in the report of Dr. Hartung and that the stipulated evidence does not support the commission's finding that relator lacked a desire to earn.
 {¶ 4} In this court's earlier decision, we issued "a limited writ of mandamus compelling the commission to vacate its decision denying Mr. Richards' election to receive impaired earning capacity compensation and compelling the commission to enter an amended order, either granting or denying the requested benefits, while adequately explaining the reasons for the decision reached." Contrary to relator's argument, the commission was not mandated to address Dr. Hartung's report, but only to give an explanation for its grant or denial of relator's claim.
 {¶ 5} In its May 1999 order, the commission stated:
 {¶ 6} "* * * [T]hat claimant voluntarily entered into under-employment, post injury, in relation to his earning capacity. * * * [C]laimant indicated that while he submitted wage statements reflecting no earnings for the period 05/18/92 through 03/15/94, and 12/11/94 through 03/31/96; he did not look for work. Further, claimant testified that he started his own driving school but that said business venture was unsuccessful. Moreover, claimant testified that he currently is not looking for employment. * * *"
 {¶ 7} Relator cites to the stipulation of evidence, at 139, to support his argument that his driving school business is thriving; however, such a statement is found only in a motion for reconsideration. There is no evidence in the record to support this statement, as arguments of counsel are not evidence. Relator's objections are overruled.
 {¶ 8} While respondents agree with the magistrate's decision that the requested writ of mandamus should be denied, both object to the statement of the magistrate, at pages 12 and 13 of the decision, that the commission set relator's average weekly wage at $635. Neither the previous decision of this court nor any order of the commission has set relator's average weekly wage at $635. The only orders in the stipulated evidence show relator's average weekly wage to be set at $289.73. Therefore, respondents' objections are well-taken.
 {¶ 9} Upon a review of the magistrate's decision and an independent review of the record, this court overrules relator's objections. Respondents' objections are sustained and paragraphs 72, 73 and 74 on pages 12 and 13 of the magistrate's decision are stricken and relator's average weekly wage is found to be $289.73. The requested writ of mandamus is denied.
Relator's objections overruled, respondents' objections sustained, writ of mandamus denied.
BRYANT and LAZARUS, JJ., concur.
 IN MANDAMUS {¶ 10} Relator, Forest Richards, filed this original action asking the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio to vacate its order denying his request for permanent partial disability ("PPD") compensation in the form of compensation for impairment of earning capacity ("IEC") under former R.C. 4123.57, and to grant his request to change his election.
Findings of Fact:
 {¶ 11} In 1977, Forrest Richards ("claimant") sustained an industrial injury while working as a delivery driver for United Parcel Service, and his workers' compensation claim was recognized for lumbosacral sprain, neuritis, and lumbar disc displacement.
 {¶ 12} In December 1982, claimant exacerbated his allowed conditions. He had surgery in March 1983 and again in March 1987.
 {¶ 13} According to its records, the employer paid three weeks of TTD compensation in 1982 at a rate of $198. In 1983 and 1984, it paid fifty-six weeks of TTD at a rate of $193.15. In making these payments, the employer used an average weekly wage ("AWW") $289.73.
 {¶ 14} In January 1984, claimant wrote to the commission stating that the employer had been paying TTD at the rate of $193.15 per week, and that claimant should have received the 1977 maximum TTD payment, which was $198. The letter indicates that claimant qualified for the maximum TTD payment despite having worked only 35 weeks for UPS in the year prior to injury.
 {¶ 15} In February 1984, claimant filed a motion requesting that the AWW be set at the maximum rate of $198. When listing supporting evidence, claimant stated: "See Sections 4123.61 and 4123.62 of the Ohio Revised Code."
 {¶ 16} In May 1986, a hearing was held, at which the evidence included a form from Mosler Safe Company showing an additional $812 in wages for 1977. The hearing officer granted the motion, setting claimant's TTD rate at $198 as requested.
 {¶ 17} In October 1990, claimant was evaluated at the Bethesda Work Capacity Center for vocational rehabilitation. Testing indicated that claimant performed in the high average range for verbal reasoning, abstract reasoning, spelling, language usage, and clerical speed and accuracy. His score in mechanical reasoning was in the "very superior" range. The evaluators concluded: "Mr. Richards currently possesses skills which could potentially be transferred to the competitive employment area without additional re-training. Mr. Richards demonstrates superior skills in intellectual functioning, fine motor dexterity and use of hand tools." The evaluators found that claimant could perform work at the sedentary/light level but could not perform the lifting/carrying and walking required in his former work. The report concluded that there were jobs claimant could perform immediately and jobs he could perform with training, but noted that a speedier return to work could be accomplished by foregoing training.
 {¶ 18} A program was arranged for claimant to be trained in Biomedical Electrical Engineering. Pursuant to that program, claimant attended a local community college for a period of time.
 {¶ 19} In January 1992, claimant filed an application for determination of percentage of PPD. He was found to have a 27% impairment, and he filed an election to receive this award in the form of IEC compensation.
 {¶ 20} In October 1996, a district hearing officer denied the election, finding that claimant had provided no evidence of his pre-injury and post-injury earning capacities.
 {¶ 21} On administrative appeal, claimant provided an "employability access" report from Carl Hartung, who concluded that claimant's loss of physical capacity had substantially reduced the number of jobs he could perform.
 {¶ 22} In November 1996, a staff hearing officer denied the appeal, citing State ex rel. Eaton Corp. v. Indus. Comm. (1993),66 Ohio St.3d 180, and concluding that neither the October 1990 report nor the Hartung report adequately assessed claimant's post-injury capacity to earn. The order noted that the Hartung report referred solely to jobs that required physical exertion.
 {¶ 23} 13. Claimant filed a mandamus action in this court, case No. 97AP-855. Pursuant to a memorandum decision of May 14, 1998 (adopting a magistrate's order of January 30, 1998), the court found that the Hartung report did not base the post-injury capacity solely on claimant's physical capacity. Rather, Mr. Hartung had found that, based on claimant's above-average I.Q., his college attendance and transferable skills, his access to the labor market had been reduced "by the reduction of the physical exertional range." Thus, the court found that the Hartung report did not refer solely to jobs that required physical exertion. The court concluded that "the commission's conclusory statement that the vocational reports do not properly assess relator's post-injury capacity to earn * * * cannot stand, without further explanation as to why such reports are insufficient to meet the requirements of Eaton." The magistrate's decision includes the following passage:
 {¶ 24} "Here, relator does not contend that his AWW at the time of injury does not represent his preinjury earning capacity nor does he claim that use of that AWW would shortchange him because he was underemployed. Indeed, he claims that his salary of $33,000 in 1977 for a high school graduate was `phenomenal.' The commission's finding that relator's evidence does not meet Eaton's requirements because relator has relied on his preinjury AWW violates both the letter and the spirit of the court's decision. There is nothing in Eaton that requires more of a claimant than relator has provided in this case regarding his preinjury earning capacity."
 {¶ 25} The court granted a limited writ, returning the matter to the commission to issue an amended order granting or denying IEC compensation.
 {¶ 26} 14. Pursuant to the court's writ, the matter was heard by a staff hearing officer in September 1998, resulting in a denial of the IEC election.
 {¶ 27} "The Staff Hearing Officer finds that in order for the claimant to receive an award under RC 4123.57(A) a claimant must prove actual impairment of earning capacity.
 {¶ 28} "The claimant has the burden of proof to support an alleged impairment of earning capacity.
 {¶ 29} "The Staff Hearing Officer finds that the claimant failed in the instant claim to sustain that burden or to show by relevant and competent evidence the existence of an actual impairment of earning capacity.
 {¶ 30} "The claimant submitted his average weekly wage at the time of his injury on 12/9/82 as representative of his pre-injury earning capacity. Average weekly wage was set at $289.73 and the full weekly wage at $531.82.
 {¶ 31} "The Staff Hearing Officer finds that the evidence submitted by the claimant consists of a vocational report dated 11/23/96 of Mr. Hartung.
 {¶ 32} The Staff Hearing Officer reviewed and rejected Mr. Hartung's report for several reasons.
 {¶ 33} "Mr. Hartung under the heading of Employability Access and Earnings Capacity states that the record reflects Mr. Richards pre-injury salary to be approximately $635 per week. This figure Mr. Hartung explains was determined in much the same way the employability access was done referring to the attached Employability Access Report.
 {¶ 34} "There follows a series of Pre-Condition Profile statistics with minimum explanation and scant references.
 {¶ 35} "The Staff Hearing Officer rejects this computer generated profile as having no relevancy to the issue at docket.
 {¶ 36} "The average weekly wage or pre-injury earning capacity as set by Mr. Hartung is greatly inflated and unacceptable.
 {¶ 37} "In the Information Please 1995 Almanac under Non-manufacturing Industries-Gross Average Weekly Earnings and Hours Worked under the heading Local and Suburban Transportation the Average Weekly Wage per week in 1985 was $309.85 for 38.3 hours worked.
 {¶ 38} "The claimant's date of injury was 12/9/1982. This was three years prior to the above listed average. Based on this figure alone Mr. Hartung's setting of claimant's (pre-injury earning capacity) or average weekly wage is flawed.
 {¶ 39} "Under State ex rel. Eaton Corp v Industrial Commission (1993) 66 Ohio St.3d 180 the claimant who alleges a pre-injury earning capacity in excess of actual earnings have the burden of so proving.
 {¶ 40} "Furthermore the parties at the hearing agreed that the claimant's average weekly wage of $289.73 would reflect the claimant's pre-injury earning capacity.
 {¶ 41} "Mr. Hartung's report basing his conclusions on a pre-injury earning capacity of $635 per week is clearly flawed.
 {¶ 42} "Furthermore under Vocational Analysis Mr. Hartung develops Mr. Richards pre-injury capacity by taking his post-injury vocational assessment at Bethesda Works Capacity Center and plugs it into his pre-injury profile.
 {¶ 43} "Mr. Hartung reasons that the post-injury tests and above average achievements as tested on 10/4/90 were probably present prior to the claimant's injury.
 {¶ 44} "Therefore the Vocational Analysis remained constant for the eight years post injury and therefore was present eight years earlier. Mr. Hartung then using some unexplained method adjusted the claimant's pre-injury profile to reflect these post-injury above average achievements.
 {¶ 45} "The Staff Hearing Officer rejects this method as without merit and speculative.
 {¶ 46} "Ms. McEntee Vocational Specialists [sic] in a Bethesda Work Capacity Center report dated 10/15/90 concluded that the claimant currently possesses skills which could potentially be transferred to competitive employment without additional training. Ms. McEntee stated that the claimant demonstrates superior skills in intellectual function of fine motor dexterity and use of hand tools.
 {¶ 47} "Furthermore Ms. McEntee in an updated report stated that based on the results of the claimant's assessment he possesses the reading, arithmetic, spelling and overall intellectual skills to succeed in a retraining program.
 {¶ 48} "Ms. Scott District Manager Bureau o[f] Workers' Compensation Division dated 2/7/91 for FORTIS states that retraining is a viable option.
 {¶ 49} "The claimant agreed to the retraining program on 2/12/91 in Biomedical Electrical Engineering. Dr. Krael physician of record agreed to the recondition maintenance program for 12 weeks on 1/22/91.
 {¶ 50} "The file does no[t] reflect any explanation a[s] to why the program was never started. Claimant under questioning did not give an explanation.
 {¶ 51} "The claimant testified that he is now engaged in setting up a driving school to train new drivers.
 {¶ 52} "The Staff Hearing Officer finds that absent any competent reason given by the claimant for failing to follow the retraining program as proposed by Ms. Scott and Ms. McEntee and considering that the claimant has chosen to become self employed, the claimant's request for impairment of earning capacity is denied.
 {¶ 53} "The Staff Hearing Officer finds that the claimant must show a desire to pursue other employment opportunities during the period for which impairment is alleged.
 {¶ 54} "The claimant did not provide any job search nor any evidence to this end.
 {¶ 55} "The Staff Hearing Officer relied for Ms. Scott's reports dated 1/9/91 to 2/7/91 and Ms. McEntee's report dated 10/15/90 in reaching this decision."
 {¶ 56} 15. On reconsideration, the members of the commission issued the following decision:
 {¶ 57} "Continuing jurisdiction is being exercised pursuant to O.R.C. 4123.52. Specifically, the Commission finds that the Staff Hearing Officer order dated 09/15/98 contains several factual mistakes which warrant further Commission review. Accordingly, the Staff Hearing Officer order dated 09/15/98 is modified to the extent of this order.
 {¶ 58} "The Commission finds that claimant has not shown an impairment in earning capacity as required under State ex rel. Eaton Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 180. Specifically, the Commission finds that claimant's legal representative urged at hearing that claimant's Average Weekly earnings for the year prior to the date of injury be used as the pre-injury earning capacity figure. Hence, claimant's $33,000.00 annual salary divided by 52 weeks would result in a $635.00 per week pre-injury earning capacity. Further, Eaton also requires that claimant provide persuasive evidence of his post-injury earning capacity, such that the dollar value of the post-injury capacity may be deducted from the pre-injury capacity in order to determine the amount of impairment, if any. In this connection, claimant urged that his post-injury earning capacity be set at $371.80, based upon the vocational assessment submitted by Mr. Carl Hartung, dated 11/23/96.
 {¶ 59} "However, the Commission finds that claimant's post-injury earning capacity is not accurately reflected in the Hartung report. Further, the Commission finds that claimant voluntarily entered into under-employment, post injury, in relation to his earning capacity. Accordingly a lack of earnings is not conclusive proof of an impairment of earning capacity. At hearing, claimant indicated that while he submitted wage statements reflecting no earnings for the period 05/18/92 through 03/15/94, and 12/11/94 through 03/31/96; he did not look for work. Further, claimant testified that he started his own driving school but that said business venture was unsuccessful. Moreover, claimant testified that he currently is not looking for employment. He stated that his last visit to the doctor was `possibly over 1 year ago.'
 {¶ 60} "In this connection, based upon vocational testing and reports performed by the Bethesda Work Capacity Center, the Commission finds that `Mr. Richards currently possesses skills which could potentially be transferred to the competitive employment arena without additional re-training. Mr. Richards demonstrates superior skills in intellectual functioning, fine motor dexterity and use of hand tools. However, since he has now been off work for eight consecutive years, re-training may be the most expedient return to work option. Both target jobs and re-training options have been included in the body of this report.'
 {¶ 61} "Based upon the foregoing, the Commission finds that claimant has limited his own post-injury earning capacity in that persuasive evidence has not been presented relative to job search efforts and/or re-training options in light of claimant's demonstrated superior skills as reported in the above noted vocational assessment and as indicated at hearing."
Conclusions of Law:
 {¶ 62} Claimant argues that the commission abused its discretion in denying his motion to receive his PPD award in the form of IEC compensation. As explained below, the magistrate concludes that claimant has not met his burden in mandamus of proving an abuse of discretion by the commission.
 {¶ 63} The payment of PPD benefits under former R.C. 4123.57
entails a two-step administrative process. First, in an initial hearing, the commission determines the percentage of disability. Then the claimant may elect to receive the award as a lump sum or in the form of IEC compensation. If the claimant files an election, a second hearing is held, at which the burden is upon the claimant to prove the actual impairment of earning capacity. State ex rel. Eaton Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 180.
 {¶ 64} The Supreme Court has made clear that the percentage of disability does not translate automatically into an equivalent percentage of impaired earning capacity. Id. at 184. Under Eaton, the commission must compare the claimant's preinjury and postinjury earning capacities, expressed in dollar amounts:
 {¶ 65} "* * * [P]reinjury and postinjury earning capacity should be represented monetarily * * * since common denomination facilitates the examination that Pauley mandates and the result that R.C. 4123.57(A) directs. Where the earning capacities are uniformly denominated, the commission need only deduct the dollar value of the employee's postinjury capacity from his or her preinjury capacity in order to determine the amount of impairment. * * *" Id. at 184. The court further explained that although the term "capacity" is not defined statutorily, it "logically encompasses the universe of jobs that a claimant, at a given time, and based on age, education, skills, physical ability, etc., can do." Id.
 {¶ 66} The focus in this action is on the calculation of claimant's post-injury earning capacity. It is well established that actual earnings after the injury do not necessarily equal the earning capacity at that time, although such evidence may be considered. State ex rel. Stanek v. Indus. Comm. (1982), 4 Ohio App.3d 63. Accordingly, a lack of any earnings is not conclusive proof of an impairment of earning capacity. State ex rel. Loral Systems Group, Inc. v. Indus. Comm. (1991), 59 Ohio St.3d 112. Evidence of a lack of desire to earn wages, however, can be dispositive. Claimant must prove a desire to earn. E.g., State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263; State ex rel. CPC Group, General Motors Corp. v. Indus. Comm. (1990),53 Ohio St.3d 209; see, also, State ex rel. Matheney v. Central Ohio Coal Co. (2000), 88 Ohio St.3d 50 (indicating that lack of a job search is a factor that can indicate a lack of desire to earn).
 {¶ 67} In the present action, claimant states the following as the first issue for review:
 {¶ 68} "IT IS CONTEMPTUOS OF THE INDUSTRIAL COMMISSION TO TOTALLY IGNORE AND CHANGE A CLAIMANT'S PRE-INJURY EARNING CAPACITY WHICH WAS BASED ON HIS AVERAGE WEEKLY WAGE THAT WAS ADOPTED BY THIS COURT IN A PREVIOUS MANDAMUS ACTION. [sic]"
 {¶ 69} In order to address this issue, the magistrate reviews the prior proceedings in mandamus. The commission had found a lack of evidence to demonstrate claimant's preinjury and postinjury earning capacity, but this court determined that there was sufficient evidence of preinjury earning capacity because there was evidence of the AWW in the record (and claimant had not challenged the AWW as representing his preinjury capacity). The court therefore concluded that claimant had provided sufficient evidence to meet his burden of proof insofar as preinjury earning capacity was concerned. The court returned the matter to the commission to issue an amended order granting or denying IEC compensation
 {¶ 70} On remand, the commission not only accepted that claimant's AWW represented his preinjury earning capacity, but it also calculated the highest possible AWW by dividing his UPS annual salary of $33,000 by 52 weeks, even though claimant was not employed by UPS for the entire year prior to injury. See, generally, Smith v. Indus. Comm. (1986),25 Ohio St.3d 25; State ex rel. Clark v. Indus. Comm. (1994),69 Ohio St.3d 563; State ex rel. Cawthorn v. Indus. Comm. (1997),78 Ohio St.3d 112; Riley v. Indus. Comm. (1983), 9 Ohio App.3d 71.
 {¶ 71} The magistrate finds that the commission had discretion to accept the claimant's AWW as evidence of his preinjury earning capacity. Further, in setting the AWW at $635 for purposes of the IEC comparison, the commission was within its discretion. See Smith, Clark, Cawthorn, and Riley.
 {¶ 72} Claimant argues that the commission should have set his AWW "in the amount of $634.62" based on "his 1977 earnings of $33,000." However, the magistrate sees no abuse of discretion in rounding $634.62 to $635, especially where a higher preinjury capacity is to claimant's advantage in an IEC comparison.
 {¶ 73} In other words, the commission accepted claimant's argument in regard to preinjury capacity. The commission rejected only claimant's arguments as to postinjury capacity. Therefore, claimant has shown no abuse of discretion with regard to the commission's assessment of claimant's preinjury capacity to earn.
 {¶ 74} In regard to claimant's postinjury to earn, the commission made two distinct findings. First, it found that the Hartung report did not provide a persuasive assessment of claimant's post-injury capacity to earn. Second, it found that claimant had not demonstrated the requisite desire to earn, relying on claimant's complete lack of earnings for several years in contrast to his physical and vocational capacity to work. The latter finding, if supported by some evidence, was sufficient in and of itself to deny IEC payments. Where the claimant has not shown a desire to earn, the commission may deny an IEC election. See Pauley, CPC Group.
 {¶ 75} The Ohio Supreme Court has explained that, where a claimant is unable to perform any kind of sustained remunerative employment, he need not demonstrate that he tried to work or looked for work. State ex rel. Evenflo v. Hinkle (2001), 91 Ohio St.3d 251. However, where a claimant is capable of performing sustained remunerative employment, he must demonstrate that he desired work and wanted to be employed, in order to be awarded PPD compensation in the form of IEC payments. See Matheney, supra.
 {¶ 76} In the subject order, the commission found that claimant was capable of returning to work, relying on the Bethesda report, which was within its discretion. Then, the commission found that, despite his ability to perform a range of jobs, claimant had several years in which he earned no wages. For this finding, the commission relied on the wage statements that claimant filed and also relied on claimant's testimony that he was not looking for work. The magistrate concludes that the commission cited some evidence to support its finding that claimant had not demonstrated the requisite desire to earn. Further, although claimant testified that he had tried to start his own business, the commission was not required to find that the lack of income from that venture was causally related to his industrial injury. See, generally, State ex rel. Ooten v. Siegel Interior Specialist Co. (1998), 84 Ohio St.3d 255.
 {¶ 77} The commission cited some evidence and provided a reasonable explanation to support its conclusion that claimant had not demonstrated the necessary elements for an IEC election. Accordingly, the magistrate concludes that the commission complied with this court's writ and reached a decision that was within its discretion, and that the court should deny the requested writ of mandamus.