THE STATE EX REL. EATON CORPORATION, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Eaton Corp. v. Indus.
Comm.* (1993), 66 Ohio St.3d 180.]

(No. 92–713—Submitted February 16, 1993—Decided May 5, 1993.)

*Willacy & LoPresti* and *Aubrey B. Willacy,* for appellant.

*Zwick Law Offices Company, L.P.A.*, and *Leander P. Zwick III*, for appellee Harold Derr.

*Lee I. Fisher*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee Industrial Commission.

---

*Per Curiam.* Appellant alleges that the commission abused its discretion in both awarding impaired earning capacity benefits and refusing to reduce the award by the amount of temporary total disability compensation previously overpaid. We disagree with appellant's contentions but, upon review, find that the commission abused its discretion by calculating claimant's impaired earning capacity as it did. Accordingly, the judgment of the court of appeals is reversed in part and affirmed in part.

Appellant's initial propositions invoke *res judicata* in response to the commission's refusal to reduce claimant's award by the amount of temporary total disability compensation overpaid. Appellant's argument is based on the November 14, 1986 order, in which staff hearing officers, citing *State ex rel. Martin, supra,* found a "recoupable" overpayment of temporary total disability compensation and ordered reimbursement from the surplus fund. Appellant was fully reimbursed from the fund. On October 27, 1987, a district hearing officer—presumably unaware that appellant had been repaid—ordered permanent partial disability compensation paid "less any TT overpaid," in effect ordering claimant to reimburse appellant as well. Claimant's request for reconsideration generated an April 21, 1988 order that deleted the language ordering a setoff against previously paid benefits for temporary total disability. The commission affirmed on October 20, 1988.

Appellant claims that the April 21, 1988 order—by omitting the setoff language—impermissibly altered the November 14, 1986 order, which had become final. This action, according to appellant, violated *res judicata.* Appellant's argument, however, assumes that the earlier order authorized repayment from both the surplus fund and the claimant—an assumption with which we take issue.

The only express directive in the November 14, 1986 order called for repayment from the surplus fund, not from claimant. We find that the order's reference to "recoupment" and the *Martin* decision—on which appellant apparently relies—is insufficient to establish that the order contemplated repayment from the claimant. As to the former, the mere use of the term "recoupment" in cases dealing with repayment by a claimant does not persuade us that the term has developed a special connotation that sets it apart from synonyms such as "repayment" or "reimbursement."

So, too, with *Martin*. While *Martin* factually involved repayment by a claimant, its principles extend to reimbursement from the surplus fund to self-insured employers such as appellant. *State ex rel. DeLong v. Indus. Comm.* (1988), 40 Ohio St.3d 345, 533 N.E.2d 729. The order's reference to *Martin*, therefore, does not necessarily mean that recovery from claimant was necessarily contemplated.

For these reasons, we find that the commission's April 21, 1988 and October 20, 1988 orders did not modify the November 14, 1986 final order. The later orders did not address appellant's entitlement to surplus fund reimbursement, and since repayment from the claimant was not ordered initially, the deletion of the setoff language from the October 27, 1987 order did not conflict with the earlier order. The only modification provided by the April 21, 1988 and October 20, 1988 orders was to the October 27, 1987 order, which was not final, having been kept alive by claimant's reconsideration motion. *Res judicata* was not, therefore, violated.

Appellant also urges vacation of the May 17, 1990 award of impaired earning capacity benefits because (1) due process was violated and (2) it is not supported by "some evidence," as *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, demands. As to the former, we agree that claimant's submission of his May 24, 1990 affidavit to the commission *after* the May 17, 1990 hearing on impaired earning capacity, coupled with claimant's apparent failure to provide a copy to appellant, foreclosed response from appellant and thereby violated due process. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.* (1974), 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447; *State ex rel. Owens–Illinois, Inc. v. Indus. Comm.* (1991), 61 Ohio St.3d 456, 575 N.E.2d 202. We do not, however, find that the order must fall as a result. *State ex rel. Canter v. Indus. Comm.* (1986), 28 Ohio St.3d 377, 28 OBR 437, 504 N.E.2d 26, permits us to simply disregard the affidavit and proceed with our review of the remaining evidence. Unfortunately, inconsistent findings make it impossible to tell what the commission actually found, precluding us from reviewing the order for "some evidence."

Former R.C. 4123.57(A) stated that:

"[T]he employee shall receive per week sixty-six and two-thirds per cent of the impairment of his earning capacity * * *, not to exceed a maximum amount of weekly compensation which is equal to the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code * * *." Am.Sub.H.B. No. 1282, 137 Ohio Laws, Part II, 3946.

A determination would under R.C. 4123.57(A) be simple if mere impairment of *earnings* were involved. Instead, it involves earning *capacity*, which

connotes not what claimant *did* earn, but what he or she *could have* earned. "Capacity," while statutorily undefined, logically encompasses the universe of jobs that a claimant, at a given time, and based on age, education, skills, physical ability, etc., can do. It is noteworthy that R.C. 4123.57(A) directs the payment of sixty-six and two-thirds percent of the claimant's impaired earning capacity. It thus presumably intended that claimant's earning capacity impairment be expressed as a dollar figure.

Because impairment of earning capacity derives from a comparison of claimant's preinjury and postinjury earning capacity, *State ex rel. Pauley v. Indus. Comm.* (1990), 53 Ohio St.3d 263, 559 N.E.2d 1333, two separate earning capacity determinations are necessary. Given our observations above, it follows that preinjury and postinjury earning capacity should be represented monetarily as well, since common denomination facilitates the examination that *Pauley* mandates and the result that R.C. 4123.57(A) directs. Where the earning capacities are uniformly denominated, the commission need only deduct the dollar value of the employee's postinjury capacity from his or her preinjury capacity in order to determine the amount of impairment. The commission, however, has employed a different formula, using average weekly wage ("AWW") and medical impairment to designate claimant's preinjury and postinjury earning capacities respectively. For the reasons to follow, we find that this method constitutes an abuse of discretion.

The formula's initial assumption—that AWW represents claimant's preinjury earning capacity—will not always hold true. Granted, in many cases the position at which the injury occurred is the only job that claimant could do before the injury. *State ex rel. Mt. Carmel Health v. Forte* (1992), 65 Ohio St.3d 335, 603 N.E.2d 1014. In that situation, claimant's AWW may indeed represent the claimant's maximum potential earnings, and, therefore, his or her preinjury earning capacity. On the other hand, exclusive reliance on AWW could shortchange other claimants, particularly those who are underemployed when injured. We caution, however, that claimants who allege a preinjury earning capacity in excess of actual earnings have the burden of so proving. *State ex rel. Johnson v. Indus. Comm.* (1988), 40 Ohio St.3d 384, 533 N.E.2d 775; *State ex rel. Apgar v. Indus. Comm.* (1989), 42 Ohio St.3d 5, 535 N.E.2d 1364.

A second flaw in the formula used by the commission is that claimant's postinjury earning capacity is not designated monetarily but is instead represented purely by degree of medical impairment. Despite the obvious problems of attempting to subtract the proverbial apple from the orange, consideration of medical impairment alone violates *State ex rel. Arias v. Indus. Comm.* (1990), 49 Ohio St.3d 76, 551 N.E.2d 135, which mandates consider-

ation of nonmedical disability factors such as age, education, training, etc. Even with identical degrees of medical impairment, no two people have their earning capacities affected in exactly the same way. For example, a complete loss of lumbar function may have virtually no impact on the ability to earn of an attorney, whose livelihood depends on mental, not physical ability. On the other hand, to a lifelong laborer with a sixth grade education, an injured back may represent a one-hundred-percent impairment of earning capacity. Consideration of nonmedical factors is, therefore, crucial. However, in any case in which the degree of medical impairment is the sole measure of postinjury earning capacity, the commission either did not consider nonmedical factors, or, upon consideration, concluded that those factors did not, in any way, affect the worker's earning capacity. We cannot excuse the former or find the latter plausible in this case.

Applying these principles to the instant case, the equation of AWW with claimant's preinjury earning capacity is not an abuse of discretion, given the commission's written findings. Noting that claimant "has no formal education for any type of work other than machine work and laborer type employment"—which describes his job with appellant—the commission's order suggests that claimant's former position of employment represented his maximum preinjury earning potential, and thus defined his earning capacity.

In this case, it is the commission's treatment of postinjury earning capacity and the resulting determination of impairment that highlights the current formula's flaws. The commission's extensive discussion of claimant's education, work history, etc. convinces us that the commission indeed considered claimant's nonmedical disability factors. The order also strongly suggests that any jobs for which claimant is academically or vocationally qualified are precluded by his industrial injury. Claimant's postinjury earning capacity is, therefore, zero dollars. Deducting this figure from claimant's preinjury earning capacity of $286.90 results in an impairment, or diminution, of earning capacity of $286.90. Sixty-six and two-thirds percent of that figure is approximately $191.27.

This is not, however, what the commission awarded. It instead set claimant's weekly rate of compensation at $43.99. Since this rate is a reflection of the amount of impairment found, we are unable to determine what the commission ultimately concluded. While its written findings suggest a total impairment of earning capacity, its mathematical computation suggests a lesser impairment. Absent clarification—which the commission cannot achieve under its present formula—our evidentiary review can go no further.

We thus find that the commission abused its discretion in the method by which it determined claimant's impaired earning capacity. It can no longer

assume that AWW represents a claimant's preinjury earning capacity. The determination must be made on a case-by-case basis. The commission also may no longer use medical impairment to represent postinjury earning capacity, and must henceforth determine postinjury earning capacity in the same manner as preinjury earning capacity.

For the reasons set forth above, we affirm that portion of the appellate court judgment that found no violation of *res judicata.* We also affirm the appellate court's finding of a due process violation. The balance of the court's judgment is reversed and the cause is returned to the commission for further consideration and amended order in accordance with this opinion.

*Judgment reversed in part,*
*affirmed in part*
*and limited writ granted.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.