OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.


The State ex rel. Mathess v. Wheeling-Pittsburgh Steel Corporation et al.
[Cite as State ex rel. Mathess v. Wheeling-Pittsburgh Steel Corp. (1994),      Ohio St.3d      .]
Workers' compensation -- Partial disability compensation --
     Election of compensation under former R.C. 4123.57(A) --
     Industrial Commission's denial of a motion for change of
     election an abuse of discretion, when.
     (No. 92-2575 -- Submitted November 9, 1993 -- Decided February 2, 1994.)
     In Mandamus.
     Relator-claimant, George O. Mathess, was injured on May 25, 1967 while in the course of and arising from his employment with respondent, Wheeling-Pittsburgh Steel Corporation. His workers' compensation claim was allowed for "[b]urns to right side of face, neck, chin, hands and chest; contusion and abrasions to mid back; fracture of 10th and 11th ribs."
     In 1974, claimant sought partial disability compensation under former R.C. 4123.57. Respondent Industrial Commission found a ten-percent permanent partial disability. Given the statutory option of receiving this award as former R.C. 4123.57(A) impaired earning capacity benefits or permanent partial disability compensation under former 4123.57(B), claimant chose the latter.
     Between 1974 and 1985, the commission ultimately increased claimant's permanent partial disability to sixty percent. During that same period, his claim was amended to include "[h]ypertension," "acute cervical strain, muscle tendonous in origin," "aggravation of pre-existing anxiety neurosis," "discogenic disease of C5-C6 and aggravation of degenerative osteoarthritic changes of the cervical spine."
     On January 12, 1991, after approximately forty-one years with Wheeling-Pittsburgh, claimant retired. His separation form indicated a "30 year" as opposed to "disability" retirement. Six months later, claimant moved to change his partial disability election from permanent partial disability compensation to impaired earning capacity benefits. Claimant's sole supporting evidence was his statement that "[b]ecause of

all the pain and frustration from my injuries, I retired two years earlier than I had intended.  I am able to receive my pension for years worked, but cannot get social security for another two years."  The form also indicated that he had a high school diploma and a work history that ranged from "laborer to roll provider."  When asked to describe the physical nature of his work, claimant characterized it as a mix of moderate, heavy, and light.

On August 8, 1991, a commission district hearing officer denied claimant's motion, stating:

"While the claimant has demonstrated good cause pursuant to the Fellers case [State ex rel. Fellers v. Indus. Comm. (1983), 9 Ohio App. 3d 247, 9 OBR 421, 459 N.E.2d 605] (unforeseen circumstances of subsequent increases and claimant's percentage of permanent partial disability and allowance of additional conditions), there is insufficient evidence to determine that the claimant has sustained an impairment in earning capacity based upon the disability resulting from the allowed conditions of this claim.

"There is no medical evidence which states that there is a causal connection between the disability from the allowed conditions and the claimant's inability to earn wages (i.e., earning capacity) by performing any work or duties for which he is otherwise qualified by virtue of training or prior work experience."

The regional board of review affirmed without comment.

Appealing further, claimant submitted additional evidence to staff hearing officers.  His August 23, 1991 affidavit stated:

"* * * [W]hen he [claimant] terminated his employment * * *  he was employed as a roll provider in the * * * Wheeling Pittsburgh Steel Corporation; [and] among other things his duties required him about 40 times a day to lift a 1" steel cable and loop it over a hook on a crane and then lift it off again; but this activity required him to look up and created significant pain and headaches on account of his neck injury.

"* * * [F]rom time to time in his employment he would be required to handle and lift heavy items which created similar problems in his neck.

"* * * [T]he painful symptoms associated with his injury interfered substantially with his ability to rest or sleep and seemed to worsen his anxiety state and generally cause a deterioration of his overall physical and mental condition; [and] he reached the point that he just didn't feel that he could continue working, and because he had already qualified by age and length of service or pension, he elected to accept his pension.

"Affiant further says that he would have continued to work if he could, because by doing so, his overall pension benefits would have increased as would his social security benefits when he becomes eligible to receive them, but his painful symptoms are such that he just didn't feel he could continue working."

A report from Dr. Jonathan D. Lechner indicated that claimant had restrictions on lifting, climbing and crawling. Dr. Lechner also responded affirmatively to the following question:

"Has such medical impairment caused a decrease in

claimant's energy, usefulness, health, and strength so that when considered with other non-medical evidence there has been a corresponding decrease in the ability of claimant to earn a living subsequent to his compensable injury as compared to his ability to earn a living prior to sustaining the disability?"

Dr. Thomas R. Ream also answered that question affirmatively. He concurred in Dr. Lechner's restrictions and added limitations on stretching, driving, work rate, heavy lifting and repetitive upper extremity use.

Staff hearing officers affirmed the regional board's order, stating:

"It is the finding and order of the Staff Hearing Officers that claimant's appeal be denied, and the finding and order of the Regional Board be affirmed for the reason that it is supported by proof of record and is not contrary to law."

Claimant thereupon filed the instant complaint in mandamus to compel the commission to grant his motion to change his election.

Larrimer & Larrimer and Craig Aalyson, for relator.

Vorys, Sater, Seymour & Pease, Russell P. Herrold, Jr., and Bradley K. Sinnott, for respondent Wheeling-Pittsburgh Steel Corporation.

Lee I. Fisher, Attorney General, and Merl H. Wayman, Assistant Attorney General, for respondent Industrial Commission.

Per Curiam. Under former R.C. 4123.57, a claimant could elect how to receive partial disability compensation - - as impaired earning capacity compensation under R.C. 4123.57(A) or permanent partial disability under R.C. 4123.57(B). For "good cause shown," however, a claimant could switch his election. Former R.C. 4123.57(A) (130 Ohio Laws 932-933.). "Good cause," in turn, requires "unforeseen changed circumstances subsequent to the initial election and actual impaired earning capacity." (Emphasis added.) State ex rel. Combs v. Goodyear Tire & Rubber Co. (1992), 62 Ohio St.3d 378, 381, 582 N.E.2d 990, 992.

The first element, "unforeseen changed circumstances," is "deliberately flexible in order to accommodate the many possible situations that could merit a change of election." State ex rel. Long v. Mihm (1992), 64 Ohio St.3d 527, 529, 597 N.E.2d 134, 136. It, too, has two components, "with changed circumstances being a condition precedent to consideration of foreseeability." Id. To date, three examples of "changed circumstances" sufficient to trigger a foreseeability inquiry have been identified: (1) recognition of additional conditions after election (Combs), (2) significant worsening of claimant's condition (State ex rel. Simpson v. Indus Comm. [1991], 62 Ohio St.3d 162, 580 N.E.2d 779), or (3) transformation of a non-work preventive injury into a work-prohibitive one. Id.

Claimant has unquestionably established "unforeseen changed circumstances." His six-fold increase in disability subsequent to election demonstrates a "significant worsening" of his condition. The post-election recognition of six additional conditions also satisfies the criterion established by Combs.

The presence of actual impaired earning capacity

attributable to claimant's allowed conditions is less clear-cut. Claimant's assertion of impaired earning capacity appears to rest solely on claimant's present lack of employment and resultant lack of income. The commission district hearing officer denied a change of election citing a lack of medical evidence causally relating claimant's allowed conditions to his lack of wages.

This finding is an abuse of discretion. While such evidence was indeed absent when the district hearing officer made his decision, it was present before the staff hearing officers. Doctors Lechner and Ream both connected claimant's medical impairment to the "decrease in the ability of claimant to earn a living subsequent to his compensable injury as compared to his ability to earn a living prior to sustaining the disability." When the staff hearing officers affirmed the regional board's order without comment, however, they inherently adopted the district hearing officer's reasoning. See State ex rel. DeMint v. Indus. Comm. (1990), 49 Ohio St.3d 19, 550 N.E.2d 174. Given the cited medical reports, the commission, through its staff hearing officers, erred in denying impaired earning capacity benefits on this basis.

Our rejection of the commission's reasoning does not, however, compel a finding that claimant's earning capacity has been impaired, since two key issues have yet to be decided: (1) identification of claimant's preinjury earning capacity (State ex rel. Eaton Corp. v. Indus. Comm. [1993], 66 Ohio St.3d 180, 610 N.E.2d 992), and (2) the nature of claimant's retirement. A finding of voluntary retirement does not foreclose a finding of actual impaired earning capacity if claimant can establish that the injury hampers his or her ability to perform other post-retirement jobs for which claimant is otherwise qualified. State ex rel. CPC Group v. Indus. Comm. (1990), 53 Ohio St. 3d 209, 559 N.E.2d 1330. Claimant must also show a desire to indeed pursue other employment opportunities. A claimant who voluntarily retires with no intention of ever working again cannot establish actual impaired earning capacity. State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263, 559 N.E.2d 1333.

Conversely, a finding of injury-induced retirement does not automatically establish impaired earning capacity. Impaired earning capacity depends on the extent of claimant's preinjury earning capacity. For example, an inability to do prior construction duties will have different effects on the life-long laborer and the medical student who worked construction over summer break. The latter's earning capacity may not be impacted at all while the former's may be destroyed. See, generally, Eaton. Further consideration of this issue is, therefore, necessary.

We thus find that the stated basis for the commission's denial of the motion for change of election is an abuse of discretion. Discussion in this case, however, can go no further absent additional consideration. Accordingly, we vacate the commission's order and issue a limited writ returning the cause to the commission for further inquiry into the issue of claimant's actual impaired earning capacity and a new order.

                                        Limited writ granted.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.