DECISION
{¶ 1} Relator, Borden, Inc., commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order granting respondent Louis Wilson compensation for impairment of earning capacity under former R.C.4123.57(A) for the period October 17, 1990 through August 6, 1998, and to enter an order denying Wilson impairment of earning capacity compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded Wilson failed to present some evidence of impairment of earning capacity with respect to the entire period at issue. Accordingly, the magistrate determined the court should issue a writ of mandamus ordering the commission to vacate its order awarding impairment of earning capacity compensation, and to enter an order denying the compensation. Wilson has filed an objection to the magistrate's decision, contending that even if the magistrate properly concluded that evidence regarding Wilson's pre-injury and post-injury earnings alone is insufficient to support an award for impairment of earning capacity, the record contains additional facts that would support the award.
 {¶ 3} Without question, the staff hearing officer's order does not cite evidence on which the staff hearing officer properly may rely to award impairment of earning capacity compensation. Specifically, although the order cites the medical report of J. Stephen Beam, M.D., that report simply details Dr. Beam's physical examination of Wilson and his conclusion regarding Wilson's impairment rating. As the magistrate observed, that evidence alone does not support an award for impairment of earning capacity. Nor do the pre-injury and post-injury earnings discussed in the staff hearing officer's decision in themselves support the award.
 {¶ 4} Rather than examine the record to determine whether any further evidence may be construed to support an award of impairment of earning capacity, we return the matter to the Industrial Commission to ascertain whether the record contains the requisite evidence to support an impairment of earning capacity award to Wilson. To that extent, Wilson's objection is sustained.
 {¶ 5} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and has appropriately noted the relevant law. Because, however, the evidence on which the commission relied is insufficient to support its decision and because this court is reluctant, in the first instance, to construe the record evidence to determine whether any other evidence may support an award, we adopt the magistrate's findings of fact but reject the magistrate's application of the law to the facts of this case, including the magistrate's recommended disposition of this case. Instead, we issue a limited writ of mandamus ordering the Industrial Commission of Ohio to vacate its order granting Wilson compensation for impairment of earning capacity under former R.C. 4123.57(A), and to issue a new order, either granting or denying the requested compensation and citing the evidence on which the commission relies.
Objection sustained to the extent indicated; limited writ granted.
TYACK and LAZARUS, JJ., concur.
 IN MANDAMUS {¶ 6} In this original action, relator, Borden, Inc. ("Borden"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting respondent Louis Wilson ("claimant") compensation for impairment of his earning capacity ("IEC") under former R.C. 4123.57(A) for the period October 17, 1990 through August 6, 1998, and to enter an order denying respondent IEC compensation.
Findings of Fact:
 {¶ 7} 1. On March 26, 1981, claimant sustained an industrial injury while employed as an inspector for Borden, a self-insured employer under Ohio's Workers' Compensation laws. The industrial claim was initially allowed for "right hernia; low back injury," and was assigned claim number 759449-22.
 {¶ 8} 2. On October 31, 1988, claimant filed an application for permanent total disability ("PTD") compensation.
 {¶ 9} 3. On October 29, 1990, claimant filed a motion that the claim be additionally allowed for a depressive disorder.
 {¶ 10} 4. Following a March 19, 1992 hearing, a commission deputy issued an order denying claimant's PTD application. The commission itself reconsidered the deputy's order in August 1992, and in September 1992 mailed an order modifying the deputy's order and denying the PTD application. The commission's order found that claimant was vocationally and medically able to perform "light duty work." Claimant was 65 years of age at that time.
 {¶ 11} 5. On July 12, 1995, claimant filed an application for the determination of his percentage of permanent partial disability ("PPD").
 {¶ 12} 6. On October 18, 1995, claimant was examined by J. Stephen Beam, M.D. Dr. Beam issued a typewritten narrative report dated November 29, 1995. He also completed a medical evaluation form on which he assigned a 27 percent permanent impairment for the right inguinal hernia and the low back injury.
 {¶ 13} 7. On January 10, 1996, the Ohio Bureau of Workers' Compensation ("bureau") mailed a "tentative order" finding a percentage of PPD of 27 percent based upon Dr. Beam's reports.
 {¶ 14} 8. Thereafter, in January 1996, claimant filed an election to receive compensation based upon impairment if his earning capacity.
 {¶ 15} 9. On January 26, 1998, claimant filed a second application for PTD compensation.
 {¶ 16} 10. Following a March 3, 1998 hearing, a district hearing officer ("DHO") issued an order ruling on claimant's October 29, 1990 motion for an additional claim allowance. The DHO's order additionally allowed the claim for "depressive disorder" based upon a report from Dr. Edmond J. Goold dated October 18, 1990.
 {¶ 17} 11. Apparently, the DHO's order of March 3, 1998 was not administratively appealed.
 {¶ 18} 12. On July 17, 1998, relator was examined by psychologist Myron J. Horn, Ph.D. In an addendum report dated August 7, 1998, Dr. Horn stated that, based upon the depressive disorder alone, claimant cannot return to sustained remunerative employment.
 {¶ 19} 13. Following a July 28, 1999 hearing, a staff hearing officer ("SHO") issued an order granting the PTD application. Relying upon Dr. Horn's reports, the SHO found that claimant is PTD based upon the depressive disorder alone. PTD compensation was awarded beginning August 7, 1998, the date of Dr. Horn's addendum report.
 {¶ 20} 14. On October 25, 2000, claimant moved for IEC compensation based upon his January 1996 election. In support, claimant submitted information on bureau form C-94-A captioned "Wage Statement." To verify the information to be given on bureau form C-94-A, the form provides an affidavit form to be completed and executed. However, the affidavit form was not completed or executed on the wage statements submitted by claimant.
 {¶ 21} 15. The wage statements submitted by claimant contain information regarding gross weekly earnings. Gross weekly earnings amounts show that claimant worked steadily during the following periods: (1) August through December 1991; (2) June through October 1993; (3) November through December 1994; and (4) April through November 1995. During those periods, claimant usually worked a five day week and typically earned from $150 to $200 per week.
 {¶ 22} The wage statements do not show gross weekly earnings for the following periods: (1) prior to August 1991; (2) January 1992 to June 1993; (3) November 1993 to November 1994; and (4) after November 1995.
 {¶ 23} 16. Following a March 8, 2001 hearing at which claimant did not appear, the DHO issued an order denying IEC compensation. Claimant administratively appealed the DHO's order.
 {¶ 24} 17. Following an April 9, 2001 hearing at which claimant did not appear, an SHO issued an order vacating the DHO's order and granting IEC compensation. The SHO's order states:
 {¶ 25} "The claimant's request for an impairment of earning capacity award from 10/17/1990 (the date after which the claimant alleges he was last paid temporary total compensation[)] through 08/06/1998 (after which he was paid permanent total disability compensation) is granted. The report of J. Ste[p]hen Beam, M.D., dated 11/29/1995, supports the claimant's request to be paid compensation for his impairment of earning capacity.
 {¶ 26} "It is found that the claimant's pre-injury capacity is $334.38, his average earnings during the year prior to his injury. The claimant's post injury earning capacity is found to be zero during the weeks that he did not work, times two-thirds. During the weeks that the claimant worked, his post injury earning capacity is $334.38 (his pre-injury earning capacity) minus the actual amount he earned for each week, times two-thirds.
 {¶ 27} "This award is ordered to be paid as of 10/17/1990 (the date the claimant alleges that he initially sustained an impairment of earning capacity), less any periods of temporary total disability compensation paid over the same time. This award is ordered to be paid through 08/06/1998 (the date prior to his award for permanent total disability), unless the statutory maximum is reached prior to that time."
 {¶ 28} 18. On July 12, 2001, another SHO mailed an order refusing Borden's administrative appeal from the SHO's order of April 9, 2001.
 {¶ 29} 19. On January 28, 2002, relator, Borden, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 30} The entire period at issue, October 17, 1990 through August 6, 1998, contains periods of apparent unemployment and periods in which claimant had earnings. Both types of periods merit separate discussion.
 {¶ 31} The magistrate finds that claimant failed to present some evidence of IEC with respect to the entire period at issue. Accordingly, as more fully explained below, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order awarding IEC compensation, and to enter an order denying IEC compensation.
 {¶ 32} Former R.C. 4123.57 permitted a successful applicant for PPD compensation to select the method of payment — as a lump-sum PPD award under former R.C. 4123.57(B) or as weekly IEC compensation under former R.C. 4123.57(A). Entitlement under the latter is not automatic. A claimant must prove both actual IEC and a causal relationship to his or her allowed condition. State ex rel. Backus v. Indus. Comm. (2001), 91 Ohio St.3d 251, 253.
 {¶ 33} It is well-settled that IEC compensation cannot be paid absent a postinjury desire to work. State ex rel. CPC Group, General Motors Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 209; State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263.
 {¶ 34} A lack of a job search can indicate the absence of a desire to earn where the IEC claimant remains unemployed yet able to work. Backus, supra. However, where the IEC claimant is unable to work, lack of a job search is not fatal to showing IEC. State ex rel. Evenflo Juv. Furniture Co. v. Hinkle (2001), 91 Ohio St.3d 74.
 {¶ 35} Here, the record presents the commission's 1992 adjudication of the claimant's PTD application wherein the commission determined that claimant was medically and vocationally able to perform sustained remunerative employment of a light duty nature. That adjudication was premised upon several medical reports cited by the commission in its order. One of those reports was from commission specialist H. Tom Reynolds, M.D., who examined the claimant on July 27, 1990 for the allowed conditions of the claim. Dr. Reynolds opined in his report that the claimant "could perform sustained remunerative employment within the sedentary and light job duty classification."
 {¶ 36} Here, claimant sought and was awarded IEC compensation beginning October 17, 1990, the day following termination of temporary total disability compensation. Claimant apparently remained unemployed from October 17, 1990 until August 1991.
 {¶ 37} The commission's 1992 adjudication of claimant's first PTD application effectively precludes any claim from claimant that he was unable to work beginning October 17, 1990. Given an ability to perform sustained remunerative employment during the period of unemployment and, in the absence of evidence of an unsuccessful job search, claimant is precluded from IEC compensation during that period because he failed to present any evidence of a desire to earn. Backus, supra.
 {¶ 38} As previously noted, claimant was also unemployed from January 1992 to June 1993, from November 1993 to November 1994, and from November 1995 to August 6, 1998, the day prior to the start of his PTD award.
 {¶ 39} While claimant contended in his second PTD application that he was permanently and totally disabled as early as November 24, 1997 based upon a report from Dr. Newman of that date, the commission refused to rely upon Dr. Newman's report to start PTD compensation earlier than August 7, 1998. Hence, the commission adjudication of claimant's second PTD application effectively precludes any claim from claimant that he was unable to work for the periods of unemployment prior to August 7, 1998. Under such circumstances, the absence of evidence of a job search for the periods of unemployment at issue here, precludes IEC compensation because the claimant has failed to present evidence of a desire to earn during the periods of unemployment.
 {¶ 40} Undeniably, the C-94-A wage statements showing gross weekly wages are evidence of a desire to earn during the periods of employment. However, mere evidence of postinjury decreased earnings is not some evidence of postinjury earning capacity.
 {¶ 41} In State ex rel. Eaton Corp. v. Indus. Comm. (1993),66 Ohio St.3d 180, the court explains how the commission is to calculate IEC. The Eaton court's explanation is instructive here:
 {¶ 42} "A determination would under R.C. 4123.57(A) be simple if mere impairment of earnings were involved. Instead, it involves earning capacity, which connotes not what claimant did earn, but what he or she could have earned. `Capacity,' while statutorily undefined, logically encompasses the universe of jobs that a claimant, at a given time, and based on age, education, skills, physical ability, etc., can do. It is noteworthy that R.C. 4123.57(A) directs the payment of sixty-six and two-thirds percent of the claimant's impaired earning capacity. It thus presumably intended that claimant's earning capacity impairment be expressed as a dollar figure.
 {¶ 43} "Because impairment of earning capacity derives from a comparison of claimant's preinjury and postinjury earning capacity, State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263, 559 N.E.2d 1333, two separate earning capacity determinations are necessary. Given our observations above, it follows that preinjury and postinjury earning capacity should be represented monetarily as well, since common denomination facilitates the examination that Pauley mandates and the result that R.C. 4123.57(A) directs. Where the earning capacities are uniformly denominated, the commission need only deduct the dollar value of the employee's postinjury capacity from his or her preinjury capacity in order to determine the amount of impairment. * * *
 {¶ 44} "* * * [T]hat AWW represents claimant's preinjury earning capacity — will not always hold true. Granted, in many cases the position at which the injury occurred is the only job that claimant could do before the injury. * * * In that situation, claimant's AWW may indeed represent the claimant's maximum potential earnings, and, therefore, his or her preinjury earning capacity. On the other hand, exclusive reliance on AWW could shortchange other claimants, particularly those who are underemployed when injured. We caution, however, that claimants who allege a preinjury earning capacity in excess of actual earnings have the burden of so proving. * * *" Id. at 183-184. (Emphasis sic.)
 {¶ 45} Here, relator contends, and the commission concedes, that it was an abuse of discretion for the commission to set preinjury earning capacity at $334.38, claimant's average weekly wage ("AWW"). The magistrate disagrees. As the Eaton court explained, claimants who allege a preinjury earning capacity in excess of actual earnings have the burden of so proving. Eaton, supra.
 {¶ 46} Here, claimant did not allege a preinjury earning capacity in excess of his AWW. Hence, it was not an abuse of discretion that the SHO's order of April 9, 2001, fails to offer an explanation as to why preinjury earning capacity is $334.38, claimant's AWW.
 {¶ 47} The commission did, however, abuse its discretion in its determination that postinjury earning capacity is zero during the weeks that claimant did not work. The commission also abused its discretion in determining that, during the weeks claimant worked, postinjury earning capacity is $334.38 minus the actual amount earned each week.[1] The commission should have determined that claimant had failed to provide any evidence upon which the commission could calculate postinjury earning capacity.
 {¶ 48} It is well-settled that IEC is not established by the mere showing of diminished or no wages. State ex rel. Gool v. Owens Illinois, Inc. (1998), 82 Ohio St.3d 178, 179; State ex rel. Shotts v. Austin Powder Co. (1999), 84 Ohio St.3d 429, 431.
 {¶ 49} Claimant's postinjury earning capacity "logically encompasses the universe of jobs" that he can do after the injury given his age, education, skills and physical abilities. Eaton, at 184.
 {¶ 50} Here, we do not know whether claimant was underemployed during the periods that he had earnings or whether he was fully employed according to his capabilities. We simply know what his earnings were. We are not even told the job or jobs he performed to obtain the earnings listed on the C-94-A wage statements.
 {¶ 51} It is clear that neither the commission nor this court can assume, as claimant seems to suggest, that his reported gross weekly earnings represent postinjury earning capacity.
 {¶ 52} Relator did not testify at the commission hearings, nor did he submit an affidavit. No vocational report was submitted to give some factual background and interpretation to the earnings. Something more than the mere presentation of earnings is needed to prove IEC. In short, claimant failed to present even a prima facie case for IEC compensation.
 {¶ 53} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the April 9, 2001 order of its staff hearing officer granting IEC compensation, and to enter an order denying IEC compensation.
[1] Even if it could be said that relator's gross weekly earnings present an accurate picture of his postinjury earning capacity, the commission would err by subtracting gross weekly earnings from AWW.