{¶ 1} Relator, Richard Hoffman, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying his application for impairment of earning capacity under former R.C. 4123.57(A) and to enter a new order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including finings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission stated a valid reason for rejecting the reports of the vocational expert and that this court should deny the requested writ.
 {¶ 3} Relator filed an objection to the decision of the magistrate continuing to argue that respondent commission had abused its discretion in rejecting the vocational evaluation. For the reasons stated in the decision of the magistrate, the objection is overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objection overruled; writ of mandamus denied.
PETREE, P.J., and BRYANT, J., concur.
 DECISION IN MANDAMUS {¶ 5} In this original action, relator, Richard Hoffman, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him compensation for impairment of earning capacity ("IEC") under former R.C. 4123.57(A) and to enter an order granting him IEC compensation.
Findings of Fact:
 {¶ 6} 1. On July 1, 1986, relator sustained an industrial injury which was initially allowed for: "cut and bruise both legs; face; and hands; injury to chest and back; bruised left arm and left leg," and assigned claim number PEL48285. On the date of injury, relator was employed as a police officer for Perry Township. He was involved in a motor vehicle accident.
 {¶ 7} 2. On June 4, 1987, relator filed an application for the determination of his percentage of permanent partial disability ("PPD").
 {¶ 8} 3. Following an October 21, 1987 hearing, a district hearing officer ("DHO") issued an order finding that relator had seven percent PPD. Relator elected to receive compensation under former R.C. 4123.57(B), and he received a lump-sum payment for 14 weeks of compensation pursuant to the statute.
 {¶ 9} 4. On February 5, 1988, relator moved for the recognition of an additional claim allowance. Following a March 16, 1988 hearing, the industrial claim was additionally recognized for: "aggravation of pre-existing fracture of the left temporomandibular joint."
 {¶ 10} 5. Relator filed an application for an increase in his percentage of PPD. Following a December 29, 1989 hearing, a DHO issued an order finding that the percentage of PPD had increased five percent to a total of 12 percent. Pursuant to his previous election, relator received compensation under former R.C. 4123.57(B) in a lump-sum payment for ten weeks of compensation.
 {¶ 11} 6. On February 25, 1992, relator applied for another increase in his per-centage of PPD. Following a June 26, 1992 hearing, a DHO issued an order finding that the percentage of PPD had increased 13 percent to a total of 25 percent. Relator received compensation pursuant to his prior election in a lump-sum payment for 26 weeks of compensation.
 {¶ 12} 7. In 1993, relator requested authorization for arthroscopic surgery of the left knee. A commission DHO authorized this surgery following an April 19, 1994 hearing.
 {¶ 13} 8. On December 19, 2001, relator moved for payment of IEC compensation and to change his election. In support, relator submitted two reports, one from Neil E. Richard, M.D., dated October 26, 2001, and the other from Beal D. Lowe, Ph.D., dated December 4, 2001. The October 26, 2001 report from Dr. Richard states:
 {¶ 14} "Richard is a patient who we started seeing in our office in October of 1997. He is status post a motor vehicle accident where he suffered multiple contusions, injury to chest[,] back, arms and legs. He continues to complain of knee and back pain. Due to his current symptoms it is my opinion Richard will be unable to perform the duties of a police officer. This opinion would be as of the day I first saw him which was in October, 1997."
 {¶ 15} 9. The December 4, 2001 report of Dr. Lowe, a vocational expert, states:
 {¶ 16} "REASON FOR REFERRAL
 {¶ 17} "Information regarding Mr. Hoffman's employment and earnings history was provided to provide a basis for assessing any loss of earning capacity which may have resulted from his industrial injury.
 {¶ 18} "CLAIM ALLOWANCES
 {¶ 19} "Mr. Hoffman's 1986 industrial injury has been allowed for: Cuts and bruises on both legs, face, hands; injury to chest and back; bruises to left arm and left leg; aggravation of pre-existing fracture of left temporomandibular joint.
 {¶ 20} "RESIDUAL PHYSICAL FUNCTIONAL CAPACITIES
 {¶ 21} "Neil Richard, M.D. (10/26/01) reported on his medical treatment and assessment of Mr. Hoffman who has been his patient since October, 1997. Dr. Richard found that Mr. Hoffman had been unable to perform the duties of the Police Officer since at least the date of his first examination in October, 1997.
 {¶ 22} "WORK HISTORY
 {¶ 23} "Mr. Hoffman was injured in July, 1986 when he had been employed as a Police Officer by Perry Township for approximately four years.
 {¶ 24} "Since approximately 1990, Mr. Hoffman has been employed as a Bail Bondsman.
 {¶ 25} "UPDATED PRE-INJURY EARNING CAPACITY
 {¶ 26} "At the time of his 1986 injury, Mr. Hoffman had weekly earnings of $362.63.
 {¶ 27} "Had Mr. Huffman [sic] been able to continue with his career as a Police Officer he would now have approximately 19 years experience. Data from the U.S. Department of Labor indicates average weekly 2001 earnings of $838 for Ohio Police Officers with this much experience.
 {¶ 28} "Further evidence of Mr. Hoffman's updated earning capacity is indicated by the fact that Senior Police Officers with the City of Columbus have 2001 weekly earnings of $980.
 {¶ 29} "CURRENT POST-INJURY EARNING CAPACITY
 {¶ 30} "Referral materials indicates that Mr. Hoffman has had average earnings in the last three years, after 7-10 years in his current occupation as a Bail Bondsman, in the range from $28,000-$32,000 per year. After 10 years of post-injury employment, these figures are used to calculate a current maximum post-injury weekly earning capacity of $577.
 {¶ 31} "SUMMARY AND CONCLUSIONS
 {¶ 32} "This assessment finds Mr. Hoffman to have an updated pre-injury weekly earning capacity in the $838 — $980 [range]. These figures reflect, respectively, average Ohio and actual 2001 Columbus salaries for experienced Police Officers.
 {¶ 33} "This assessment finds Mr. Hoffman to have a current post-injury weekly earning capacity of $577.
 {¶ 33} "This assessment finds Mr. Hoffman to have experienced a current post-injury weekly loss of earning capacity in the $261 — $403 range as a result of his industrial injuries."
 {¶ 34} 10. Neither the employer nor the administrator of the Ohio Bureau of Workers' Compensation has submitted any evidence in opposition to relator's December 19, 2001 motion for IEC compensation.
 {¶ 35} 11. Following a March 25, 2002 hearing, a DHO issued an order granting the change of election, but denying IEC compensation. The DHO's order states:
 {¶ 36} "First, the District Hearing Officer finds that claimant has shown good cause for approval of a change of election. This finding of good cause is based on a finding that there have been unforeseen changed circumstances since the initial election in this claim. Specifically, since the initial election this claim has been additionally allowed for aggravation of pre-existing fracture of the left temporomandibular joint, and claimant's percentage of permanent partial disability has also increased in the interim. Based on this, there is sufficient evidence showing good cause.
 {¶ 37} "However, there is insufficient evidence showing that claimant has sustained an impairment of earning capacity due to the allowed conditions in this claim. A 12/04/2001 report from Dr. Beal Lowe, Ph.D., which was submitted with claimant's motion, demonstrates that claimant's current earnings are less than those earnings that claimant would have had had he remained in his former position of employment as a police officer. This report estimates an earning capacity of $577.00. This report also states that police officers with approximately 19 years of experience, what claimant would have had had he continued in his former position of employment, have weekly earnings of $838.00.
 {¶ 38} "However, the above report only compares the difference in the claimant's earnings currently with the earnings he may have had in his former position of employment. This report is insufficient in demonstrating an overall impairment of earning capacity. While it may have [sic] be true that claimant currently is not earning as much as he would of earned in his former position of employment, there is insufficient indication from this report that claimant's overall earning capacity has been impaired by the allowed conditions in this claim. There is no indication from this report that claimant's allowed conditions have impaired his ability to earn equivalent wages in any line of employment. In other words, this report only shows that claimant is currently earning less money than he might have been earning in his former position of employment. It does not sufficiently demonstrate how claimant's overall earning capacity has been impaired. Based on the above, there is insufficient evidence in file that claimant has sustained an actual impairment in his earning capacity. Therefore, his request for said compensation is denied."
 {¶ 39} 12. Relator administratively appealed the March 25, 2002 DHO order.
 {¶ 40} 13. On April 15, 2002, Dr. Lowe wrote:
 {¶ 41} "I am writing in response to your request that I provide additional data to support the conclusion of my December 4, 2001 Earning Capacity Assessment that Mr. Hoffman's post-injury earning capacity is reflected in his current earnings as a Bail Bondsman.
 {¶ 42} "Mr. Hoffman is now 54 years old and has been disabled from his pre-injury employment as a Police Officer since the date of his injury in July, 1986. Since 1990, Mr. Hoffman reports that he has been employed as a Bail Bondsman.
 {¶ 43} "In my Earning Capacity Assessment of Mr. Hoffman, I found that his current earnings as a Bail Bondsman reflected maximum post-injury earnings following an injury which disabled him, per the medical opinion of Neil Richard, M.D. (10/26/01), from his usual occupation as a Police Officer. The ICO Record of Proceedings (3/25/02) which you have provided to me indicates that the Hearing Officer found that my report did not establish that Mr. Hoffman's current earnings reflect injury-related impairment in his earning capacity but only that he is now earning less than he did at the time of his injury.
 {¶ 44} "Having lost the physical capacity to perform as a Police Officer after a reported 4 years experience in that occupation, Mr. Hoffman re-entered the labor market as an approximately 40-year-old man with a High School education. Functional limitations arising from his allowed conditions, which were found by Dr. Richard to preclude further employment as a Police Officer, are found to have precluded employment in other high-paying Medium Strength occupations in transportation, construction and corrections.
 {¶ 45} "In light of these limitations, Mr. Hoffman appears to have chosen to direct his career into an area where his law-enforcement experience would be relevant but in which he would be able to perform work in the Light range of physical demands. On this basis, he chose in 1990 to begin work as a Bail Bondsman.
 {¶ 46} "At the present time, after approximately 12 years employment in this occupation, Mr. Hoffman reports annual earnings in the $28,000 — $32,000 range. The average of these figures indicates post-injury weekly earnings of $577. The higher of these figures indicates post-injury weekly earnings of $615.
 {¶ 47} "For purposes of comparison, it is noted that the average 2002 weekly earnings of Caucasian 55-year-old male High School graduates, including those with physical capacity for the highest paying Medium and Heavy occupations, is $689.
 {¶ 48} "In conclusion, this review finds that Mr. Hoffman's injury has precluded his capacity to work in his usual occupation as a Police Officer or in other high paying construction, transportation and corrections occupations. Following his injury, Mr. Hoffman became employed as a Bail Bondsman, a Light occupation to which his police-related skills were transferable. After 12 years in this occupation, Mr. Hoffman is found to be earning 84-89% of the average weekly wage for white males of his age and education. Mr. Hoffman's less than average income is presented here as reflecting one measurement of the loss of earning capacity which resulted from his injury-related inability to perform his usual occupation or other higher paying occupations which are available to High School graduates who can perform Medium or Heavy occupations. Another measure of Mr. Hoffman's losses is provided by the fact that his current earnings are found to reflect only 73% of average weekly earnings in 2001 for Ohio Police Officers."
 {¶ 49} 14. Following a May 16, 2002 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states:
 {¶ 50} "* * * The Staff Hearing Officer affirms the District Hearing Officer's decision to grant a change of election based upon a finding of good cause shown. As noted by the District Hearing Officer, there have been unforeseen changed circumstances since the initial election in this claim. Since the initial election, this claim has been additionally allowed for aggravation of pre-existing fracture of the left temporomandibular joint and there has been an increase in the claimant's permanent partial disability.
 {¶ 51} "* * * With respect to the request for compensation based on impairment of earning capacity, this request remains denied. An additional report from Dr. Beal Lowe, dated 04/15/2002, was submitted at today's hearing.
 {¶ 52} "As noted by the District Hearing Officer order, the 12/04/2001 report of Dr. Lowe demonstrates that claimant's current earnings as a Bail Bondsman are less than those earnings that claimant would have had had he remained in his former position as a Police Officer. As noted by the District Hearing Officer, this report only compares the difference in the claimant's current earnings with those of his former position. This report did not address the central issue of whether the claimant's earning capacity had been impaired. An impairment of earning capacity goes to the issue of whether the range of employment options has been reduced by the industrial injury rather than a monetary/financial issue.
 {¶ 53} "The new report by Dr. Lowe, dated 04/15/2002, likewise fails. This report asserts that there is a difference between being a Police Officer and a Bail Bondsman. The Staff Hearing Officer does not accept these conclusory statements. The Staff Hearing Officer specifically finds that Dr. Lowe does not adequately document the difference between these two occupations by reference to the Dictionary of Occupational Titles or other standard occupational reference book. In reading through this report, the Staff Hearing Officer is not convinced that the claimant has established that his employment options have been adversely affected by the industrial injury of this claim.
 {¶ 54} "Accordingly, the request for impairment of earning capacity compensation is denied."
 {¶ 55} 15. On June 11, 2002, another SHO mailed an order refusing to hear relator's appeal from the SHO's order of May 16, 2002.
 {¶ 56} 16. Thereafter, relator, Richard Hoffman, filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 57} The issue is whether the commission stated a valid reason for rejecting the reports of Dr. Lowe. Finding that the commission provided a valid reason for rejecting Dr. Lowe's reports, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 58} Former R.C. 4123.57 permitted a successful applicant for PPD compensation to select the method of payment — a lump-sum PPD award under former R.C. 4123.57(B) or as weekly IEC compensation under former R.C. 4123.57(A). Entitlement under the latter is not automatic. A claimant must prove both actual IEC and a causal relationship to his or her allowed condition. State ex rel. Backus v. Indus. Comm. (2001),91 Ohio St.3d 251, 352.
 {¶ 59} In State ex rel. Eaton Corp. v. Indus. Comm. (1993),66 Ohio St.3d 180, the court explains how the commission is to calculate IEC. The Eaton court's explanation is instructive here:
 {¶ 60} "A determination would under R.C. 4123.57(A) be simple if mere impairment of earnings were involved. Instead, it involves earning capacity, which connotes not what claimant did earn, but what he or she could have earned. `Capacity,' while statutorily undefined, logically encompasses the universe of jobs that a claimant, at a given time, and based on age, education, skills, physical ability, etc., can do. It is noteworthy that R.C. 4123.57(A) directs the payment of sixty-six and two-thirds percent of the claimant's impaired earning capacity. It thus presumably intended that claimant's earning capacity impairment be expressed as a dollar figure.
 {¶ 61} "Because impairment of earning capacity derives from a comparison of claimant's preinjury and postinjury earning capacity, State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263 * * *, two separate earning capacity determinations are necessary. Given our observations above, it follows that preinjury and postinjury earning capacity should be represented monetarily as well, since common denomination facilitates the examination that Pauley mandates and the result that R.C. 4123.57(A) directs. Where the earning capacities are uniformly denominated, the commission need only deduct the dollar value of the employee's postinjury capacity from his or her preinjury
 {¶ 62} "* * * [T]hat AWW [average weekly wage] represents claimant's preinjury earning capacity — will not always hold true. Granted, in many cases the position at which the injury occurred is the only job that claimant could do before the injury. * * * In that situation, claimant's AWW may indeed represent the claimant's maximum potential earnings, and, therefore, his or her preinjury earning capacity. On the other hand, exclusive reliance on AWW could shortchange other claimants, particularly those who are underemployed when injured. We caution, however, that claimants who allege a preinjury earning capacity in excess of actual earnings have the burden of so proving. * * *" Id. at 183-184. (Emphasis sic.)
 {¶ 63} It is well-settled that IEC is not established by the mere showing of diminished or no wages. State ex rel. Gool v. Owens Illinois, Inc. (1998), 82 Ohio St.3d 178, 179; State ex rel. Shotts v. Austin Powder Co. (1999), 84 Ohio St.3d 429, 431.
 {¶ 64} The DHO explained why he rejected Dr. Lowe's December 4, 2001 report as failing to show actual IEC. The DHO stated that the report "only shows that claimant is currently earning less money than he might have been earning in his former position of employment." Dr. Lowe's December 4, 2001 report sets forth "current" post-injury earning capacity based upon relator's average earnings for the last three years as a bail bondsman. Dr. Lowe calculated a current maximum post-injury earning capacity of $577.
 {¶ 65} In his December 4, 2001 report, Dr. Lowe seems to assume, rather than to explain, that relator's earnings as a bail bondsman represent post-injury earning capacity. Certainly, it was within the DHO's discretion to interpret the December 4, 2001 report as failing to show why relator's employment as a bail bondsman represents post-injury earning capacity.
 {¶ 66} Relator administratively appealed the DHO's decision and attempted to correct the DHO's stated concerns with Dr. Lowe's report by requesting that Dr. Lowe prepare another report which he did on April 15, 2002.
 {¶ 67} In his April 15, 2002 report, citing Dr. Richard's opinion that the industrial injury precludes work as a police officer, Dr. Lowe finds that relator is precluded from employment "in other high-paying Medium Strength occupations in transportation, construction and correction." Dr. Lowe then states that it appears that relator has "chosen to direct his career into an area where his law-enforcement experience would be relevant but in which he would be able to perform work in the Light range of physical demands."
 {¶ 68} As the commission correctly points out here, Dr. Richard did not assess relator's residual functional capacity in any formal manner from which Dr. Lowe could make such a strength assessment. (Commission's brief at 7.) Thus, it is unclear how Dr. Lowe could conclude that relator is restricted to light work, based upon Dr. Richard's report.
 {¶ 69} It may be that Dr. Lowe determined from some unidentified source that police work is a medium strength occupation and that, if relator is precluded from police work, he must also be precluded from all medium strength occupations. However, if that was Dr. Lowe's analysis, he fails to identify the source supporting the analysis.
 {¶ 70} Moreover, as the SHO points out in his order, Dr. Lowe fails to document the physical demands of work as a police officer and bail bondsman. The SHO refused to accept Dr. Lowe's conclusory assertions that police work is a medium strength occupation, and that a bail bondsman functions in the light range of physical demands. The SHO pointed out that Dr. Lowe failed to document the difference between the two occupations by reference to the Dictionary of Occupational Titles or some other standard occupational reference book.
 {¶ 71} It was the duty of the commission to weigh or evaluate Dr. Lowe's opinion on IEC. The commission was not required to accept Dr. Lowe's opinion or analysis simply because there was no other report from a vocational expert to dispute it.
 {¶ 72} Dr. Lowe's failure to document his findings by reference to a standard occupational source would certainly hamper the commission's ability to evaluate the reports. Thus, it was well within the commission's discretion to reject Dr. Lowe's reports largely on grounds that he had failed to document his findings.
 {¶ 73} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.